CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 14, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Antonio M. Allen, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:24-cv-00067 |
| | ) | |
| Officer Walker *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on Plaintiff Antonio M. Allen's motion for reconsideration. (Dkt. 68.) For the reasons that follow, the court will deny Allen's motion for reconsideration.

## I.    Background[1]

This case arises out of injuries Allen suffered, inflicted by a fellow inmate and co-defendant, following Allen's allegedly improper transfer. When Allen was booked into Central Virginia Regional Jail ("CVRJ") in Orange County, Virginia he was a defendant in a criminal case pending in the Western District of Virginia. (Compl. ¶¶ 4–5, 13–14 (Dkt. 1).) Neamyera A. Davis, a co-defendant in the case, was later booked into CVRJ. (*Id.* ¶ 15.) Internal policy at CVRJ requires that "Keep Separate" orders be placed and followed for all inmates who are co-defendants in criminal cases. (*Id.* ¶ 16.) Such an order requires inmates not to be placed together in the same housing assignment as another inmate named in the Keep Separate order.

---

[1] The court previously granted in part and denied in part several motions to dismiss by the served Defendants pursuant Federal Rule of Civil Procedure 12(b)(6). (*See* Dkt. 61.) The court assumes familiarity with the facts and incorporates the background section recited in its prior memorandum opinion. (Dkt. 60.) Here, the court also recites those facts necessary to resolving Allen's motion.

(*Id.*)  CVRJ's corrections officers are trained on these policies and procedures.  (*Id.* ¶ 17.)
Because of their status as co-defendants, a Keep Separate order was generated by CVRJ's
Offender Management System ("OMS") for Allen and Davis.  (*Id.* ¶ 18.)

On August 30, 2023, Allen was moved from a segregation unit into F-Block, where
Davis was being housed.  (*Id.* ¶¶ 19–21, 50.)  When Defendant Officer Walker began to escort
Allen to F-Block, Allen informed him that Davis was housed in F-Block and that there was a
Keep Separate order in place between them.  (*Id.* ¶ 23.)  Despite that information, Walker
continued moving Allen to F-Block.  (*Id.* ¶ 24.)  As Walker moved Allen to F-Block, Defendant
Lieutenant Blagriff walked past them and asked which housing unit Allen was being assigned
to.  (*Id.* ¶ 25.)  After Walker told Blagriff that Allen was being moved to F-Block, Allen asked
Blagriff whether any of his co-defendants were also housed in F-Block.  (*Id.* ¶ 26.)  Blagriff
responded that Allen had no Keep Separate orders in his file.  (*Id.* ¶ 27.)  Had Walker or
Blagriff checked CVRJ's OMS, they would have seen the Keep Separate order in place for
Allen and Davis.  (*Id.* ¶ 29.)

About 17 minutes after Allen was moved into to F-Block, Davis and another inmate,
Anthony J. Young, entered the housing unit.  (*Id.* ¶ 33.)  After Davis called Allen into a cell
under the guise of wanting to talk, Davis and Young viciously assaulted and battered Allen,
causing him to lose consciousness and sustain serious injury.  (*Id.* ¶ 34.)  Allen suffered a
broken jaw and fractured orbital bone.  (*Id.* ¶ 35.)

The process of moving inmate starts with CVRJ's Institutional Classification
Committee (the "ICC"), a group charged with recommending an inmate's housing assignment.
(*Id.* ¶ 38.)  The recommendation is forwarded to the Chief Operations Officer or

Superintendent of CVRJ for approval.  (*Id.* ¶ 39.)  At the time of Allen's transfer, Defendant Captain Brian Bachert was the Chief Operations Officer and Classification Officer ("COO"), Defendant Deputy Colonel Brian Huffman was the Deputy Superintendent, and Defendant Colonel Frank E. Dyer was the Superintendent of CVRJ.  (*Id.* ¶ 40.)  Bachert, as the COO of CVRJ, was responsible for overseeing the relocation of inmates, approving transfers, making housing assignments, addressing inmates' requests for protective custody, and amending housing assignments based on changing security needs.  (*Id.* ¶¶ 41–42.)  Dyer, as Superintendent of CVRJ, was responsible for approving inmate transfers from segregation units to general population units, as well as overseeing inmate relocations within CVRJ. (*Id.* ¶ 43.)  Huffman, as Deputy Superintendent, shared many of the same responsibilities as Dyer. (*Id.* ¶ 44.)

Bachert, Dyer, and Huffman failed to comply with the Keep Separate order for Allen and Davis, despite observing it in the OMS when approving the ICC's recommendation for reclassifying Allen.  (*Id.* ¶ 48.)

On August 29, 2024, Allen filed a two-count complaint in the U.S. District Court for the Western District of Virginia.  (*See* Dkt. 1-1; Compl. ¶¶ 60–81.)  Allen brings both counts against Defendants Walker, Blagriff, Officer G. Gray, Bachert, Dyer, Huffman, and Officer John Doe.  (*Id.*)  In Count I, Allen asserts a claim under the Fourteenth Amendment against all Defendants.  (*Id.* ¶¶ 60–70.)  Under that Amendment, Allen claims a right to be "free from cruel and unusual punishment and to adequate, safe, secure, and humane conditions of detention and confinement, including constitutional protections from inhumane conditions of confinement through Defendants' deliberate indifference to his safety."  (*Id.* ¶ 61.)  In Count

II, Allen asserts a claim under Virginia tort law for "Gross Negligence/Willful & Wanton Negligence" against all Defendants.  (*Id.* ¶¶ 71–81.)

Six of the seven defendants moved to dismiss the complaint for failure to state a claim.  (*See* Dkts. 21 (Blagriff), 27 (Bachert and Dyer), 46 (Huffman), 48 (Walker and Gray).)  On May 7, 2025, the court issued an order and memorandum opinion granting Bachert and Dyer's motion to dismiss.  (Dkts. 60, 61.)  The order also granted in part and denied in part Blagriff's, Huffman's, and Walker and Gray's motions to dismiss.  (Dkt. 61.)

On May 21, 2025, Allen filed a motion for reconsideration, asking the court to reconsider and vacate the portion of its May 7, 2025, order dismissing Allen's Fourteenth Amendment claims (Count I) against Blagriff, Dyer, Bachert, and Walker.  (Dkt. 68.)  Allen also filed a brief in support.  (Allen Br. (Dkt. 69).)  On June 4, 2025, Blagriff, Bachert, Dyer, and Walker responded in opposition to the motion.  (Blagriff Resp. (Dkt. 71); Defs.' Resp. (Dkt. 72).)

## II.    Standard of Review

Federal Rule of Civil Procedure 54(b) provides, in part, that Under Rule 54(b), "any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  Said differently, under Rule 54(b), "a district court retains the power to reconsider and modify its interlocutory judgments, . . . at any time prior to final judgment when such is warranted."  *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th

- 4 -

Cir. 2003). Resolution of a motion under Rule 54(b) is "committed to the discretion of the district court." *Id.* at 515.

Courts generally limit "the grounds for a Rule 54(b) motion for reconsideration to (1) an intervening change in the law, (2) new evidence that was not previously available, or (3) correction of a clear error of law or to prevent manifest injustice." *Wootten v. Commonwealth of Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016). A motion for reconsideration is "not subject to the strict standards applicable to motions for reconsideration of a final judgment" or final order under Rule 60(b). *Am. Canoe Ass'n*, 326 F.3d at 514. Still, "the court should grant motions for reconsideration only sparingly." *Downie v. Revco Disc. Drug Ctrs., Inc.*, No. 3:05-cv-00021, 2006 WL 1171960, at *1 (W.D. Va. May 1, 2006).

A motion for reconsideration under Rule 54(b) "is not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial 'second bite at the apple' to a dissatisfied litigant." *Wootten*, 168 F. Supp. 3d at 893. Indeed, simply reiterating previously made arguments is inappropriate. *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, 755 F.Supp.2d 738, 744 (W.D. Va. 2011). Accordingly, a motion under Rule 54(b) is not an "occasion to present a better and more compelling argument that the party could have presented in the original briefs, or to introduce evidence that could have been addressed or presented previously." *Wootten*, 168 F. Supp. 3d at 893 (cleaned up). So, a movant for reconsideration "who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *Id.* (citation omitted).

- 5 -

### III.    Analysis

Allen submits that the court's previous finding that his constitutional right was not clearly established was clearly erroneous.  (Allen Br. at 2–3.)  Allen asserts that in its memorandum opinion, the court "defines the constitutional right at issue at a painstaking level of granularity inconsistent with controlling case law."  (*Id.* at 4.)  Allen, however, does not offer any argument as to what the proper constitutional right at issue should be.  Instead, he argues that based on the Fourth Circuit's opinion in *Pfaller v. Amonette*, 55 F.4th 436 (4th Cir. 2022), Defendants' "state of mind was so clear and the risk of harm was so obvious that the pre-existing law is not in controversy."  (Allen Br. at 4–6.)  Thus, Allen impliedly argues that he need not define a clearly established right because the qualified immunity argument functionally collapses into a single question of whether his federal rights were violated.  (*Id.*)

Allen's current argument differs from his previous one.  In his various responses to the motions to dismiss on qualified immunity grounds, Allen submitted that the right at issue was the "right to be protected from violence committed by other prisoners."  (*See* Dkt. 25 at 9–10; Dkt. 32 at 10–11; Dkt. 53 at 9–10.)  Yet, in his motion for reconsideration, Allen asserts language from *Pfaller* and *Ortiz v. Jordan*, 562 U.S. 180, 185–86 (2011) suggesting that the court need not undertake the clearly established prong of the qualified immunity analysis at all. (Allen Br. at 5–6.)  This strikes the court as an attempt to "present a better and more compelling argument that [Allen] could have presented in the original briefs."  *Wootten*, 168 F. Supp. 3d at 893 (citation omitted).  As noted above, a movant for reconsideration "who fails to present his strongest case in the first instance generally has no right to raise new theories or

arguments in a motion to reconsider." *Id.* (citation omitted). Still, the court will analyze the merits of the motion for reconsideration.

Qualified immunity "shields government officials from liability for civil damages when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known." *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018). To analyze qualified immunity, the court asks two questions: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (cleaned up). The court may choose the order in which to address the two prongs. *Id.* at 236.

Whether a right is clearly established under the qualified immunity doctrine is a question of law for the court. *Ray v. Roane*, 948 F.3d 222, 228 (4th Cir. 2020). A right is clearly established when it "sufficiently clear" such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). To determine whether a right is clearly established, the court must first look to cases from the Supreme Court, the Court of Appeals for the Fourth Circuit, and the Supreme Court of Virginia. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017). Courts "ordinarily need not look any further than decisions from these courts." *Id.* (cleaned up). In determining whether a right is clearly established, it is not required that a case be directly on point. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Instead, it is required that "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). "The dispositive question is 'whether

- 7 -

the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *al–Kidd*, 563 U.S. at 741). As a result, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

To start, the court begins by defining the right at issue and then moves to reviewing whether that right is clearly established. *See Scinto v. Stansberry*, 841 F.3d 219, 235 (4th Cir. 2016). In defining the right, the court must be careful "not to define clearly established law at a high level of generality." *al–Kidd,* 563 U.S. at 742. "Defining the right at a high level of generality avoids the crucial question whether the officer acted reasonably in the particular circumstances that he or she faced." *Balogh v. Virginia*, 120 F.4th 127, 138 (4th Cir. 2024) (quoting *Atkinson v. Godfrey*, 100 F.4th 498, 505 (4th Cir. 2024)). For example, in *King v. Riley*, the Fourth Circuit noted that a right "must be more specific than 'the general risks that all the inmates posed to one another and prison officials.'" 76 F.4th 259, 266 n.7 (4th Cir. 2023) (quoting *Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997)). Instead, the court emphasized specific conduct, and analyzed the right to have "a correctional officer look into the cell window while conducting a security check—given a known and substantial risk of inmate-on-inmate violence in the Unit." *King*, 76 F.4th at 266.

For Bachert and Dyer, at issue is the "the right to be free from an officer's failure to follow internal policies requiring the separation of co-defendants . . . in the absence of information about an individualized or specific threat." (Dkt. 60 at 21.) And for Walker and Blagriff, at issue is "the right not to be moved from a segregation unit to a general population

unit by an officer after alerting the officer to the presence of a co-defendant, when there is an internal policy requiring the separation of co-defendants." (*Id.* at 20–21.)

As explained in the court's prior memorandum opinion, and incorporated here, those rights are not clearly established. (*Id.* at 21–23.) In its previous analysis, the court reviewed the one Fourth Circuit case Allen cited, as well as the four district court cases cited, and determined that the right at issue was not clearly established. (*Id.*)

Allen asserts that under Fourth Circuit precedent, "defining the right at issue in the context of Eighth Amendment claims does not require the same level of specificity that is needed in" other constitutional claims such as "the Fourth Amendment context." (Allen Br. at 5 (citing *Thorpe v. Clarke*, 37 F.4th 926, 940 (4th Cir. 2022)).) Indeed, *Thorpe* does mention in passing that the Supreme Court "has regularly insisted on highly particularized law in the Fourth Amendment context, it has not done the same with Eighth Amendment claims." *Thorpe*, 37 F.4th at 940. However, even in analyzing an Eighth Amendment claim, the court still "must define the right 'in light of the specific context of the case, not as a broad general proposition.'" *Younger v. Crowder*, 79 F.4th 373, 385 (4th Cir. 2023) (quoting *Cox v. Quinn*, 828 F.3d 227, 238 (4th Cir. 2016)); *see also King*, 76 F.4th at 266 ("[W]hile it's true that we require less specificity when defining the right in the Eighth Amendment context than when the Fourth Amendment is implicated, the unlawfulness must still be 'apparent' based on pre-existing law." (citation omitted)). Accordingly, the court must "define each facet of [Allen's] deliberate-indifference claim in the 'specific context' of this case when searching for clearly established law." *Younger*, 79 F.4th at 386 (citation omitted). The court conducted such an inquiry in its previous memorandum opinion and incorporates that analysis here.

- 9 -

Allen argues that Defendants' "training and CVRJ's policy on Keep Separate orders for co-defendants put [them] on notice of the significant risk of harm that Mr. Allen faced," and therefore "their state of mind was so clear and the risk of harm was so obvious that the pre-existing law is not in controversy." (Allen Br. at 6.) He asserts that the court's "restrictively narrow definition of the constitutional right at issue" is "inconsistent with the relevant case law on qualified immunity." (*Id.*)

The case law that Allen cites says otherwise. In *Pfaller*, the Fourth Circuit reviewed a district court's qualified immunity analysis and outlined the relevant inquiry. The court there began by noting that "in order to determine whether [a right] was clearly established," it "*must* pinpoint the precise constitutional right at issue." *Pfaller*, 55 F.4th at 445 (emphasis added). *Pfaller* goes on to describe a range of Eighth Amendment cases. In some cases, the intent and harm are perfectly obvious—like when a prison doctor fails to give his patient fair treatment, or a prison guard abuses an inmate. *Id.* at 446. In other cases, intent and harm are not so obvious, particularly when there is more attenuation between the risk of harm and the defendant's knowledge that his conduct is *constitutionally deficient*. *Id.* (emphasis in original). The Fourth Circuit in *Pfaller* "reasoned that officials who are aware that their conduct is constitutionally deficient cannot rely on the clearly established prong," and as a result "sometimes, context makes the violation 'obvious' and case law is thus not needed to establish this awareness." *King*, 76 F.4th at 265 (citing *Pfaller*, 55 F.4th at 446–47). Accordingly, "when a defendant knows her conduct does not pass constitutional muster, [the court] do[es] not

look to see if she violated clearly established precedent," and instead the inquiry functionally collapses into the first prong of the qualified immunity analysis.[2]  *King*, 76 F.4th at 265.

The inquiry here does not functionally collapse into the first prong of the qualified immunity analysis.  Instead, as described above, the court uses the traditional two-step approach to qualified immunity to assess the allegations against these Defendants.  That's because "knowingly violating a prison policy does not amount to deliberate indifference."  *Id.* at 267.  Similarly, "[n]ot every violation of prison policy is a violation of the constitution."  *Id.* More importantly, it is not "obvious" that Defendant's actions—failing to stop the transfer despite their training and the presence of a Keep Separate order, but in the absence of any individualized or specific threat—violate the federal constitution.  *See id.* at 267–68 ("[Q]ualified immunity cares about violations of clearly established constitutional law, not clearly established prison policy.").  The court cannot conclude that Defendants did not "need case law to tell [them]" their failure violated the Eighth Amendment.  *Pfaller*, 55 F.4th at 446. Accordingly, Allen's argument concerning obviousness fails and the court finds that Allen was still required to allege sufficient facts indicating that these Defendants violated a clearly established right.

## IV. Conclusion

---

[2] Allen also cites *Ortiz v. Jordan* in arguing that the Supreme Court has used similar reasoning in the qualified immunity context.  (Allen Br. at 6 (citing 562 U.S. 180, 185–86, 190–91) (2011)).  He claims that the Court concluded that the "pre-existing law was not in controversy" "[r]ather than looking for precedent exactly on point," apparently arguing that this shows the Court collapsing the inquiry into the first prong of whether the plaintiff alleges a violation of a federal right.  *Id.*  The *Ortiz* Court, though, did not conduct a qualified immunity analysis.  Rather, it stated that the "pre-existing law was not in controversy" because it was emphasizing the remaining factual dispute and defendant's failure to present "neat abstract issues of law." 562 U.S. at 190–191.  The court did not, as Allen argues, "find[] that [the] prison officer defendant was not entitled to qualified immunity." (Allen Br. at 6.)

For the foregoing reasons, the court will **DENY** Allen's motion for reconsideration (Dkt. 68).

An appropriate Order will follow.

**ENTERED** this <u>14th</u> day of November 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE