Case 3:24-cv-00067-JHY-JCH    Document 76    Filed 11/14/25    Page 1 of 11
Pageid#: 397

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 14, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| Antonio M. Allen, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:24-cv-00067 |
| Officer Walker *et al.*, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

This matter is before the court on Defendant Deputy Colonel Brian Huffman's motion for judgment on the pleadings. (Dkt. 63.) For the reasons that follow, the court will grant Huffman's motion for judgment on the pleadings.

### I.   Background[1]

When viewing a motion for judgment on the pleadings, the court accepts as true the factual allegations in the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). On May 17, 2023, Plaintiff Antonio M. Allen was booked into Central Virginia Regional Jail ("CVRJ") in Orange County, Virginia as a pretrial detainee. (Compl. ¶¶ 4–5, 13 (Dkt. 1).) At the time, Allen was a defendant in a criminal case pending in the Western District of Virginia. (*Id.* ¶ 14.) Neamyera A. Davis, a co-defendant in Allen's case, was subsequently booked into CVRJ on June 30, 2023. (*Id.* ¶ 15.)

---

[1] The court previously granted in part and denied in part several motions to dismiss by the served Defendants pursuant Federal Rule of Civil Procedure 12(b)(6). (*See* Dkt. 61.) The court assumes familiarity with the facts and incorporates the background section recited in its prior memorandum opinion. (Dkt. 60.) Here, the court also recites those facts necessary to resolving Huffman's motion.

CVRJ policy requires that "Keep Separate" orders be placed and followed for all inmates who are co-defendants in criminal cases. (*Id.* ¶ 16.) Such an order requires inmates not to be placed together in the same housing assignment as another inmate named in the Keep Separate order. (*Id.*) All corrections officers at CVRJ are trained on these policies and procedures and are taught to ensure inmates with Keep Separate orders are actually kept separate from one another. (*Id.* ¶ 17.) Because of their status as co-defendants, a Keep Separate order was generated by CVRJ's Offender Management System ("OMS") for Allen and Davis. (*Id.* ¶ 18.)

On August 30, 2023, Allen was moved from a segregation unit into F-Block, where Davis was being housed. (*Id.* ¶¶ 19–21, 50.) About 17 minutes after Allen was moved into to F-Block, Davis and another inmate, Anthony J. Young, entered the housing unit. (*Id.* ¶ 33.) After Davis called Allen into a cell under the guise of wanting to talk, Davis and Young viciously assaulted and battered Allen, causing him to lose consciousness and sustain serious injury. (*Id.* ¶ 34.) Allen suffered a broken jaw and fractured orbital bone. (*Id.* ¶ 35.)

The process of moving inmate starts with CVRJ's Institutional Classification Committee (the "ICC"), a group charged with recommending an inmate's housing assignment. (*Id.* ¶ 38.) The recommendation is forwarded to the Chief Operations Officer or Superintendent of CVRJ for approval. (*Id.* ¶ 39.) At the time of Allen's transfer, Huffman was the Deputy Superintendent of CVRJ. (*Id.* ¶ 40.) As Deputy Superintendent, Huffman was responsible for approving inmate transfers from segregation units to general population units, as well as overseeing inmate relocations within CVRJ. (*Id.* ¶¶ 43–44.) Huffman failed

to comply with the Keep Separate order for Allen and Davis, despite observing it in the OMS, when approving the ICC's recommendation for reclassifying Allen. (*Id.* ¶ 48.)

On August 29, 2024, Allen filed a two-count complaint in the U.S. District Court for the Western District of Virginia. (*See* Civil Cover Sheet (Dkt. 1-1); Compl. ¶¶ 60–81.) Allen brings both counts against Huffman along with Defendants Officer Walker, Lieutenant Robert Blagriff, Officer G. Gray, Captain Brian Bachert, Colonel Frank E. Dyer, III, and Officer John Doe. (*Id.*)

In Count I, Allen asserts a claim under the Fourteenth Amendment against all Defendants. (*Id.* ¶¶ 60–70.) Under that Amendment, Allen claims a right to be "free from cruel and unusual punishment and to adequate, safe, secure, and humane conditions of detention and confinement, including constitutional protections from inhumane conditions of confinement through Defendants' deliberate indifference to his safety." (*Id.* ¶ 61.) In Count II, Allen asserts a claim under Virginia tort law for "Gross Negligence/Willful & Wanton Negligence" against all Defendants. (*Id.* ¶¶ 71–81.)

Six of the seven defendants moved to dismiss the complaint for failure to state a claim. (*See* Dkts. 21 (Blagriff), 27 (Bachert and Dyer), 46 (Huffman), 48 (Walker and Gray).) On May 7, 2025, the court issued an order and memorandum opinion granting Bachert and Dyer's motion to dismiss. (Dkts. 60, 61.) The order also granted in part and denied in part Blagriff's, Huffman's, and Walker and Gray's motions to dismiss. (Dkt. 61.) Of importance here, the court granted Huffman's motion to dismiss with respect to Count II, but denied it with respect to Count I. (*Id.* at 1.)

On May 20, 2025, Huffman filed a motion for judgment on the pleadings (Dkt. 63) and a brief in support (Huffman Br. (Dkt. 64)). On June 3, 2025, Allen responded in opposition to the motion (Allen Resp. (Dkt. 70)). And on June 10, 2025, Huffman filed a reply in support of the motion (Huffman Reply (Dkt. 73)).

## II.  Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court properly grants a motion for judgment on the pleadings "if 'it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling [her] to relief.'" *Pulte Home Corp. v. Montgomery Cnty.*, 909 F.3d 685, 691 (4th Cir. 2018) (quoting *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (4th Cir. 2014)). In making this determination, the court employs the same standard of review that applies under Rule 12(b)(6). *Mejico v. Alba Web Designs, LLC*, 515 F. Supp. 3d 424, 429 (W.D. Va. 2021) (quoting *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014)).

## III.  Analysis

Nearly all Defendants raised the affirmative defense of qualified immunity in their various motions to dismiss. (*See* Dkt. 22 at 20–23; Dkt. 28 at 5, 8–9; Dkt. 49 at 10–12.) Huffman did not. As "qualified immunity is an affirmative defense, and the burden of pleading it 'rests with the defendant,'" *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)), the court did not previously analyze whether Huffman should be afforded qualified immunity,  (Dkt. 60 at 17

n.2). The motion for judgment on the pleadings therefore represents Huffman's attempt to assert the qualified immunity defense. (Huffman Br. at 4.)

Qualified immunity "shields government officials from liability for civil damages when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known." *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018). To analyze qualified immunity, the court asks two questions: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (cleaned up). The court may choose the order in which to address the two prongs. *Id.* at 236.

Like the other Defendants, Huffman hangs his hat on the second prong and argues that Allen has not pleaded facts showing that any constitutional violation was "clearly established" at the time of the challenged conduct. (*Id.* at 7.) Accordingly, Huffman asserts that he is entitled to qualified immunity because the facts alleged in Allen's complaint do not state a plausible claim that he violated clearly established federal law. (*Id.*)

Whether a right is clearly established under the qualified immunity is a question of law for the court. *Ray v. Roane*, 948 F.3d 222, 228 (4th Cir. 2020). A right is clearly established when it "sufficiently clear" such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). To determine whether a right is clearly established, the court must first look to cases from "the Supreme Court, the Court of Appeals for the Fourth Circuit, and the Supreme Court of Virginia. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017). Courts "ordinarily

need not look any further than decisions from these courts." *Id.* (cleaned up). In determining whether a right is clearly established, it is not required that a case be directly on point. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Instead, it is required that "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *al–Kidd*, 563 U.S. at 741). As a result, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

To start, the court begins by defining the right at issue and then moves to reviewing whether that right is clearly established. *See Scinto v. Stansberry*, 841 F.3d 219, 235 (4th Cir. 2016). In defining the right, the court must be careful "not to define clearly established law at a high level of generality." *al–Kidd,* 563 U.S. at 742. "Defining the right at a high level of generality avoids the crucial question whether the officer acted reasonably in the particular circumstances that he or she faced." *Balogh v. Virginia*, 120 F.4th 127, 138 (4th Cir. 2024) (quoting *Atkinson v. Godfrey*, 100 F.4th 498, 505 (4th Cir. 2024)). For example, in *King v. Riley*, the Fourth Circuit noted that a right "must be more specific than 'the general risks that all the inmates posed to one another and prison officials.'" 76 F.4th 259, 266 n.7 (4th Cir. 2023) (quoting *Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997)). Instead, the court emphasized specific conduct, and analyzed the right to have "a correctional officer look into the cell window while conducting a security check—given a known and substantial risk of inmate-on-inmate violence in the Unit." *King*, 76 F.4th at 266.

The court will define the right consistent with how it defined the rights of other defendants in its previous memorandum opinion. (*See* Dkt. 60 at 21.) For a supervisory defendant like Huffman, at issue is the "the right to be free from an officer's failure to follow internal policies requiring the separation of co-defendants . . . in the absence of information about an individualized or specific threat." (*Id.*) As explained in the court's prior memorandum opinion, and incorporated here, those rights were not clearly established at the time of alleged misconduct. (*Id.* at 21–23.) In the court's prior analysis, the court reviewed the one Fourth Circuit case, as well as the four district court cases Allen cited, and determined that the right at issue was not clearly established. (*Id.*) The court now extends that holding to Huffman.

Allen resists that conclusion with three arguments. He first asserts that under Fourth Circuit precedent, "defining the right at issue in the context of Eighth Amendment claims does not require the same level of specificity that is needed in" other constitutional claims such as "the Fourth Amendment context." (Allen Resp. at 7 (citing *Thorpe v. Clarke*, 37 F.4th 926, 940 (4th Cir. 2022).) Indeed, *Thorpe* does mention in passing that the Supreme Court "has regularly insisted on highly particularized law in the Fourth Amendment context, it has not done the same with Eighth Amendment claims." *Thorpe*, 37 F.4th at 940. However, even in analyzing an Eighth Amendment claim, the court still "must define the right 'in light of the specific context of the case, not as a broad general proposition.'" *Younger v. Crowder*, 79 F.4th 373, 385 (4th Cir. 2023) (quoting *Cox v. Quinn*, 828 F.3d 227, 238 (4th Cir. 2016)); *see also King*, 76 F.4th at 266 ("[W]hile it's true that we require less specificity when defining the right in the Eighth Amendment context than when the Fourth Amendment is implicated, the

unlawfulness must still be "apparent" based on pre-existing law." (citation omitted)). Accordingly, the court must "define each facet of [Allen's] deliberate-indifference claim in the 'specific context' of this case when searching for clearly established law." *Younger*, 79 F.4th at 386 (citation omitted). The court conducted such an inquiry in its previous memorandum opinion and incorporates that analysis here.

Allen next asserts that he need not identify a clearly established right because a "general constitutional rule . . . may apply with obvious clarity . . . even though the very action in question has not previously been held unlawful." (Allen Resp. at 7 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).) Allen, however, does not cite any "general constitutional rule" in his motion for the court to consider. Instead, Allen argues that "Eighth Amendment cases exist on a spectrum of intent and harm and the extent of the analysis required when determining whether a right is clearly established when a plaintiff alleges an Eighth Amendment violation varies considerably across cases." (Allen Resp. at 7–8 (citing *Pfaller v. Amonette*, 55 F.4th 436, 446–47 (4th Cir. 2022)).) He encourages the court to analyze the "spectrum of intent and harm" with respect to Huffman, based on *Pfaller*. (Allen Resp. at 8.) And, he claims, because of the obviousness of the harm to him, "an extensive analysis of whether the right at issue was clearly established is unnecessary." (*Id.* at 9.)

In *Pfaller*, the Fourth Circuit reviewed a district court's qualified immunity analysis and outlined the relevant inquiry. The court began by noting that "in order to determine whether [a right] was clearly established," it "*must* pinpoint the precise constitutional right at issue." *Pfaller*, 55 F.4th at 445 (emphasis added). *Pfaller* goes on to describe a range of Eighth Amendment cases. In some cases, the intent and harm are perfectly obvious—such as when

- 8 -

a prison doctor fails to give his patient fair treatment, or a prison guard abuses an inmate. *Id.* at 446. In other cases, intent and harm are not so obvious, particularly when there is more attenuation between the risk of harm and the defendant's knowledge that his conduct is *constitutionally deficient. Id.* (emphasis in original). The Fourth Circuit in *Pfaller* "reasoned that officials who are aware that their conduct is constitutionally deficient cannot rely on the clearly established prong," and as a result "sometimes, context makes the violation 'obvious' and case law is thus not needed to establish this awareness." *King*, 76 F.4th at 265 (citing *Pfaller*, 55 F.4th at 446–47). Accordingly, "when a defendant knows her conduct does not pass constitutional muster, [the court] do[es] not look to see if she violated clearly established precedent," and instead the inquiry functionally collapses into the first prong of the qualified immunity analysis. *King*, 76 F.4th at 265.

The inquiry here does not functionally collapse into the first prong of the qualified immunity analysis. Instead, as described above, the court uses the traditional two-step approach to qualified immunity to assess the allegations against Huffman. That's because "knowingly violating a prison policy does not amount to deliberate indifference." *Id.* at 267. Similarly, "[n]ot every violation of prison policy is a violation of the constitution." *Id.* More importantly, it was not "obvious" that Huffman's action—approving the ICC's recommendation to reclassify Allen's location from Segregation to general population, then to F-Block, despite the presence of a Keep Separate order, but in the absence of any individualized or specific threat—violated the Constitution. *See id.* at 267–68 ("[Q]ualified immunity cares about violations of clearly established constitutional law, not clearly established prison policy."). The court cannot conclude that Huffman did not "need case law to tell him"

- 9 -

that his failure violated the Eighth Amendment. *Pfaller*, 55 F.4th at 446. Accordingly, Allen's argument concerning obviousness fails.

Finally, Allen asserts that the factual record does not support a claim of qualified immunity given the current procedural posture. (Allen Resp. at 9.) Allen argues that due to the "early stage in litigation" the court should find that Huffman is not entitled to qualified immunity. (*Id.* at 9–10.) However, the Supreme Court instructs federal courts that "qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (citation omitted). That is because qualified immunity is "*immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.*; *see also Atkinson v. Godfrey*, 100 F.4th 498, 504 (4th Cir. 2024) ("While qualified immunity provides a defense to liability, it is also intended to free officials from litigation concerns and disruptive discovery.") The court finds that dismissal at this stage is appropriate, as Allen has failed to allege sufficient facts to state a claim of violation of clearly established law against Huffman.

### IV. Conclusion

For the foregoing reasons, the court will **GRANT** Huffman's motion for judgment on the pleadings (Dkt. 63). Count I is dismissed against Huffman without prejudice.

An appropriate Order will follow.

**ENTERED** this 14th day of November, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

- 11 -